# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. **18-21581** Cv- Williams

UNITED STATES OF AMERICA, *ex rel.*
RICARDO L. PEREZ, M.D.,

                Plaintiff/Relator,

v.

EFRAIN H. GONZALEZ, M.D., BAPTIST
HEALTH SOUTH FLORIDA, INC.
d/b/a BAPTIST HEALTH SOUTH
FLORIDA; BAPTIST HOSPITAL OF
MIAMI, INC.;

                Defendants.

> **FILED UNDER SEAL
> PURSUANT TO
> 31 U.S.C. § 3730(b)(2)**

Sealed

FILED by _____ D.C.

APR 2 0 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## COMPLAINT FOR DAMAGES AND OTHER RELIEF
## UNDER THE FALSE CLAIMS ACT (31 U.S.C. § 3730)

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

## **NATURE OF THE CASE**

1.      For several years, patients who have been treated by Defendant EFRAIN H. GONZALEZ, M.D. ("Dr. Gonzalez"), with the consent of his employers, Defendants BAPTIST HEALTH SOUTH FLORIDA, INC. d/b/a BAPTIST HEALTH SOUTH FLORIDA ("Baptist Health"); BAPTIST HOSPITAL OF MIAMI, INC. ("Baptist Hospital") (collectively, Baptist Health and Baptist Hospital shall be referred to as "Baptist"), have been subjected to invasive, improper, unjustified, medically-unnecessary, repetitive, high-risk and costly medical procedures that were undertaken to treat cardiac arrhythmias.  Dr. Gonzalez was at all relevant times the Chief of Cardiology and Medical Director of Cardiac Electrophysiology at Baptist Hospital. Many of his patients were elderly, and Defendants have intentionally subjected these patients to multiple, unnecessary procedures, many more than were clinically indicated.   Defendants knowingly submitted false claims to Medicare and other federally-funded health care programs for these improper and unnecessary medical procedures.   At all relevant times, the conduct alleged herein was initiated and known throughout Baptist's highest corporate hierarchy, including their executive officers, department officers, chiefs of various medical divisions, and members of various peer review committees.  Defendants have knowingly perpetuated a fraud upon the United States and injured vulnerable patients in the process.

2.      Relator, Ricardo L. Perez, brings this action on behalf of the United States, pursuant to the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), to recover those funds that the Defendants have improperly obtained and retained as a result of this fraud.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

3.      Relator, Dr. Perez, has witnessed or become aware of the Medicare fraud and Defendants' predatory surgical practices during his employment at Baptist Hospital Medical Group, a wholly-owned subsidiary of Defendant, Baptist Hospital, from 2011 to 2016.

4.      Dr. Gonzalez, during the course and scope of his continuing employment with Defendants, engaged in a pattern of unnecessarily performing a variety of surgical and invasive procedures including, among others, electrophysiology studies, atrioventricular optimizations, placement and replacement of pacemakers, implantable cardioverter defibrillators, automatic implantable cardioverter defibrillators ("AICD"), syncopes and atrial fibrillation/pulmonary vein ablations. Moreover, Defendant Dr. Gonzalez routinely would bill for echocardiograms, read and/or interpret them himself so that he could then falsify the results of the echocardiogram, in order to perform and bill additional, unnecessary procedures. The sole purpose of this practice of performing multiple procedures where, at best,[1] only one procedure was clinically indicated was to submit additional bills to Medicare for the unnecessary procedures.

5.      Relator and at least two other physicians who have worked with Defendants over the past several years have confirmed a consistent pattern of fraud in Defendants' providing of surgical care, including but not limited to, (1) ordering and performing suboptimal medical procedures which fail to completely repair the medical issue(s) presented, (2) intentionally requiring the patient to undergo multiple surgical and medical procedures, in order to (3) inflate the surgical and medical fees and reimbursements, along with the related hospital and anesthesiology fees and reimbursements by the federal government. These wrongful practices commenced in approximately 2012 and continue through this date. It is possible that these

---

[1] As explained more fully below, Defendant Dr. Gonzalez has performed procedures where none was clinically or medically indicated or needed by the patient.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

wrongful practices also occurred prior to 2012, as Dr. Gonzalez has been employed by Baptist Hospital for at least the past 15 years.

      6.     Significantly, Defendants' pattern of requiring patients, many of whom are elderly, to undergo multiple surgical procedures unnecessarily, placed the patients at great risk of complications, including infections, heart perforations, and death because of the risks associated with these serious cardiac procedures and also related to undergoing general anesthesia.

      7.     Certain physicians have complained to the administration at Defendants, Baptist Health and Baptist Hospital, that many of the procedures performed by Dr. Gonzalez had been found to not be medically indicated and had been performed based on fabricated and/or fraudulently interpreted studies and clinical documentation.   Specifically, these physicians complained that patients were undergoing excessive, unnecessary and improper procedures solely for the purpose of billing Medicare.

      8.     When Baptist initially learned of Dr. Gonzalez's conduct, they did not fire him; nor did they report him to Medicare, as they are required to do.  Instead, they conducted an investigation through a Peer Review Committee.  Baptist's investigation found numerous recent cases where Dr. Gonzalez inserted the wrong pacemaker.  Specifically, Dr. Gonzalez (and possibly other cardiac electrophysiologists at Baptist) regularly put in pacemakers with higher reimbursement rates when other pacemakers were indicated.  In addition, Dr. Gonzalez was purposely misreading echocardiograms so that there would be a higher indication for a procedure for an AICD.  The Peer Review Committee found various echocardiograms where the ejection fraction, the indicator for an AICD, was flat-out wrong.  The Peer Review Committee resolved to appoint a young electrophysiologist to supervise Dr. Gonzalez going forward but, ultimately, they did not do so.

4

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

9.     Despite direct knowledge of Gonzalez's unethical and fraudulent conduct, Baptist has taken little or no action. Defendants have failed to notify either the affected patients or Medicare. Instead of making the required refunds to the federal government for these false claims, Defendants have concealed the overpayments that resulted from their scheme and enjoyed the profits and benefits of their fraudulent conduct.

10.    Moreover, instead of making the necessary systemic changes to avoid such pervasive fraud in the future, Defendants have simply continued to bill Medicare and other government agencies for excessive, unnecessary, and improper cardiac electrophysiology procedures and have falsely certified the medical necessity and appropriateness of those claims.

11.    Defendants have also repeatedly and falsely certified that they are in compliance with the regulatory conditions of participation in the Medicare program, when they know that they are not in compliance, thereby knowingly submitting additional false claims to Medicare.

12.    Accordingly, Defendants have violated federal law as they have: (a) submitted claims to Medicare and other government programs for medical procedures which they had reason to know were medically unnecessary, were being performed improperly, were excessive, were incompatible with standards of accepted medical practice, and were of no medical value; (b) falsely certified their compliance with the conditions of participation in the Medicare program when they knew that they were not in compliance with such prerequisites; and (c) failed to return to the federal government such payments that they were not entitled to receive and that they knew they were not entitled to retain.

13.    The end result of these false claims is the unjustified and illegal enrichment of Defendants, and the corresponding misappropriation and loss of millions, and potentially tens of millions, of taxpayer funds.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

14.     On behalf of the United States, Relator seeks to recover these damages as well as civil penalties arising from the false claims that Defendants caused to be submitted to the United States, as well as money damages for the wrongful retention of overpayments and refunds that are due and payable to the United States.

## JURISDICTION AND VENUE

15.     This action is brought under the *qui tam* provisions of the United States False Claims Act, 31 U.S.C. § 3729 *et seq.* The FCA provides, *inter alia,* that any person who knowingly submits a false or fraudulent claim to the federal government for payment or approval is liable to the federal government for a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each claim, plus three times the amount of the false claim. 31 U.S.C. § 3729(a).

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and pursuant to 31 U.S.C. § 3730(b).

17.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because all of the Defendants are located in and conduct business in this District, and Defendant, Efrain Gonzalez, M.D. resides and conducts business in this District.   Moreover, most if not all of the acts proscribed by 31 U.S.C. § 3729 that are alleged in this Complaint occurred in this District and Defendants can be found, reside, or transact business in this District.

18.     Venue lies within the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) and 31 U.S.C. § 3732(a) because the acts and practices alleged in this Complaint occurred in this District and all of the Defendants can be found, reside, or transact business in this District.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

## **THE PARTIES**

I.     **The Relator**

19.     Under the FCA, a person with knowledge of false or fraudulent claims against the Government (a "Relator") may bring an action on behalf of the federal government and herself/himself.

20.     Relator, Ricardo L. Perez, M.D., is a citizen and resident of Miami, Florida. Dr. Perez earned his undergraduate degree at Florida International University, and in 2011 completed his internal medicine residency at the Medical College of Georgia in Augusta, Georgia.  He is currently an internal medicine doctor licensed to practice in the State of Florida. After completing his residency in 2011, Dr. Perez joined the Hospitalist Medicine program at Baptist Hospital.  While there, Dr. Perez was actively involved in group leadership and was Chairman of the Baptist Hospital Medical Group's governing council, as well as serving on various hospital committees.   Dr. Perez left Baptist Hospital in 2016 to pursue other opportunities and is currently in private practice.  Despite having left Baptist, Dr. Perez remains in close contact with various physicians at Baptist, several of whom have corroborated the allegations provided herein by Dr. Perez.

21.     During his employment, Dr. Perez had daily contact with Defendant Dr. Gonzalez where he personally observed or became aware of Defendant, Dr. Gonzalez engaging in a consistent pattern of health care fraud involving both government and private insurance fraud. Moreover, Relator, Dr. Perez has personal knowledge of Defendant, Dr. Gonzalez 's practice of intentionally subjecting patients to multiple unnecessary cardiac procedures, and performing excessive and not medically indicated procedures for the sole purpose of increasing the amount of physician and hospital reimbursements paid by Medicare and other federally-funded

7

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

programs. Relator has also witnessed Dr. Gonzalez, on many occasions, annotate in his records that he had met with and spent significant periods of time with patients when, in fact, Dr. Gonzalez had not done so. Dr. Gonzalez did so in order to increase his medical billings.

22.     All allegations in this Complaint are based on evidence obtained directly by Relator, independently, and through his own labor and efforts. The information and evidence he has obtained or of which he has personal knowledge, and on which these allegations regarding violations of the False Claims Act are based, consist of his own personal observations, review of documents including medical records and films, conversations with other physicians, staff and employees of Defendants, and knowledge of other actions taken, or not taken, pursuant to policy, practice, or instructions from Defendants.

23.     None of the allegations set forth in this Complaint are based on a public disclosure of information in a criminal, civil, or administrative hearing; in a Congressional, administrative, or General Accounting Office report, hearing, audit, or investigation; or from the news media. Rather, they are the independent declarations of the Relator.

24.     The Relator is an original source of information within the meaning of the False Claims Act, 31 U.S.C. § 3730(e)(4)(B).

25.     Prior to the filing of this Complaint, Relator has voluntarily, through his attorneys, made all appropriate disclosures to the federal government, pursuant to 31 U.S.C. § 3730.

26.     The Relator has also complied with the statutory obligation to file this Complaint *in camera* and under seal, without service on Defendants, for 60 days, pursuant to 31 U.S.C. § 3730(b)(2).

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

## II.    The Defendants and Their Business

27.     Baptist Health South Florida, Inc. is a Florida not-for-profit corporation with its principal place of business located in Coral Gables, Florida.  Baptist Health employs more than 15,000 employees and more than 2,200 physicians.

28.     Baptist Health operates eight hospitals throughout South Florida including Defendant, Baptist Hospital of Miami, Inc.  Through its network of medical facilities, Baptist Health treats over one million patients annually.[2]

29.     Baptist Health is organized and operates exclusively for the benefit of, to perform the functions of, or to carry out the purposes of Defendant, Baptist Hospital of Miami, Inc., along with its other hospitals.

30.     Baptist Hospital of Miami, Inc. is a Florida not-for-profit corporation with its principal place of business in Miami, Florida. Baptist Hospital is currently a hospital licensed with 728 beds. Baptist Hospital is a facility of Baptist Health, along with seven others including South Miami Hospital, Inc. and Doctors Hospital.

31.     Defendant, Efrain H. Gonzalez, M.D., is a citizen and resident of Miami, Florida. At all times material, Dr. Gonzalez was the Chief of Cardiology and Medical Director of Cardiac Electrophysiology at Baptist Hospital.  Dr. Gonzalez is a board certified cardiologist. According to the Miami Cardiac and Vascular Institute at Baptist Health and the website of Heartwell, LLP (the private practice were Dr. Gonzalez was employed), Dr. Gonzalez is a specialist in cardiac electrophysiology (the science of defining, diagnosing and treating the electrical activities of the heart).  According to the website, Dr. Gonzalez is trained to perform interventional cardiac electrophysiology studies (EPS) as well as surgical device implantations.  The term EPS describes studies of invasive intracardiac catheter recordings of spontaneous heart activity, as

---

[2] *See* https://baptisthealth.net/en/about-baptist-health/pages/default.aspx.

9

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

well as cardiac responses to controlled programmed electrical stimulations. EPS is performed to assess complex arrhythmias, tachycardias, evaluate abnormal electrocardiograms, assess the risk of developing arrhythmias in the future, and design treatments for those abnormal heart rhythms. Increasingly these studies include therapeutic radio frequency ablations to correct a documented arrhythmia and or tachycardia.  Other therapeutic modalities employed in this field include antiarrhythmia drug therapies and implantation of pacemakers and implantable cardioverter-defibrillators.

32.     Dr. Gonzalez claims to be Board Certified in the subspecialties of Cardiology and Cardiac Electrophysiology.  However, a search on the American Board of Medical Specialties (ABMS) website indicated that he was only certified in Cardiology (Cardiovascular Disease), a certification conferred by the American Board of Internal Medicine.  The ABMS search did not indicate that Dr. Gonzalez is Board Certified in Cardiac Electrophysiology.  If in fact Dr. Gonzalez was not certified in Cardiac Electrophysiology, then in addition to the allegations herein regarding medically unnecessary procedures and fraudulent billing, Dr. Gonzalez was also committing fraud by holding himself out as a Cardiac EP specialist and may have been performing procedures he was not authorized or trained to perform.

33.     Dr. Gonzalez has had a private practice in electrophysiology and cardiovascular diseases since 1995 in the Miami area, including his private practice at the Cardiovascular Center of South Florida, LLC and Heartwell, LLP.

34.     Dr. Gonzalez, is sued as the agent and/or employee of Defendants, acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of Defendants.  All of the allegations against Defendant, Dr. Gonzalez stated herein are related to conduct that occurred while he was an employee and/or agent of Defendants, and while he was

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

acting within the course and scope of his employment and/or agency at Defendants. Defendants

consented to, participated in, and had full knowledge of the fraudulent conduct of Defendant, Dr.

Gonzalez at all times material hereto.

## APPLICABLE LAW AND REGULATIONS

### III.   The False Claims Act

35.   The FCA, as amended, provides in pertinent part that:

> [A]ny person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990...plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

36.   The terms "knowing" and "knowingly" in the FCA provision above "mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

37.   The FCA is the federal government's primary tool to recover losses due to fraud and abuse by those seeking payment from the United States. *See* S. Rep. No. 345, 99 Cong. 2d Sess. at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266.

### IV.   Cost Reporting and Claims Processing Procedures Under The Medicare Program

38.   In 1965, Congress enacted the Health Insurance for the Aged and Disabled Act, 42 U.S.C. § 1395 *et seq.*, known as the Medicare Program, as part of Title XVIII of the Social

11

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

Security Act. to pay for the costs of certain health care services. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 426, 426-1.

39.     Reimbursement for Medicare claims is made by the United States through the Centers for Medicare and Medicaid Services ("CMS"), which is an agency of the Department of Health and Human Services ("HHS") and is directly responsible for the administration of the Medicare Program.

40.     CMS contracts with private companies, referred to as "fiscal intermediaries," to administer and pay claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the fiscal intermediaries act on behalf of CMS. 42 C.F.R. § 413.64. Under their contracts with CMS, fiscal intermediaries review, approve, and pay Medicare bills, called "claims," received from medical providers. Those claims are paid with federal funds.

41.     There are two primary components to the Medicare Program, Part A and Part B. Medicare Part A authorizes payment for institutional care, including hospitals, skilled nursing facilities, and home health care. 42 U.S.C. § 1395c-1395i-5. Medicare Part B is a federally subsidized, voluntary insurance program that covers a percentage of the fee schedule for physician services as well as a variety of medical and other services to treat medical conditions or prevent them. 42 U.S.C. §§ 1395j-1395w-5. The allegations herein involve both Parts A and B for services billed by the Defendants to Medicare.

42.     Under Medicare Part A, hospitals enter into an agreement with Medicare to provide health care items and services to treat Medicare patients. The hospital, also called a "provider," is authorized to bill Medicare for that treatment. Most hospitals, including the Defendant's hospitals, derive a substantial portion of their revenue from the Medicare Program.

12

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

43.    At all times material hereto, the Medicare program was administered by individual states, including Florida, through private insurance carriers. These carriers contracted with the Department of Health and Human Services and served as fiscal intermediaries to receive, adjudicate, and pay Medicare claims submitted to it by Medicare beneficiaries, physicians, or providers of services.

44.    In order to get paid, a hospital completes and submits a claim for payment on a designated claim form, which, during the relevant time period, was or has been designated either as a Form UB-4 (also known as a CMS-1450) or a Form UB-92. This form contains patient-specific information including the diagnosis and types of services that are assigned or provided to the Medicare patient. The Medicare Program relies upon the accuracy and truthfulness of the UB-4/UB-92 to determine whether and what amounts the hospital is owed.

45.    In addition, at the end of each fiscal year, CMS requires hospitals to submit a Form 2552, more commonly known as the Hospital Cost Report, to the fiscal intermediary. The Hospital Cost Report contains information on facility characteristics, utilization data. costs, Medicare settlement data, financial statement data, and cost and charges by cost center. 42 C.F.R. § 413.20(b), 42 U.S.C. § 1395g.

46.    While Medicare payments for inpatient hospital services are determined by the claims submitted by the provider for particular patient discharges (specifically listed on UB-4s/UB-92s) during the course of the fiscal year, this Medicare liability for inpatient services is then totaled with any other Medicare liabilities to the provider and is reported on the annual Hospital Cost Report. This total determines Medicare's liability for services rendered to Medicare beneficiaries during the course of fiscal year. From this sum, the payments made to the

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

provider during the year arc subtracted to determine the amount due to either the Medicare Program or the provider.

47.     Medicare relies on the Hospital Cost Report to determine whether the provider is entitled to more reimbursement than the provider has already received through interim payments, or whether the provider has been overpaid and must reimburse Medicare. 42 C.F.R. §§ 405.1803, 413.60, and 413.64(0)(1).

48.     A key purpose of the Hospital Cost Reports is to protect the federal government from loss due to mistake or fraud. Medicare has the right to audit Hospital Cost Reports and financial representations made by program participants to ensure their accuracy and preserve the integrity of the Medicare Trust Funds. However, while Hospital Cost Reports are potentially subject to audit review, it is generally known throughout the health care industry that fiscal intermediaries do not have sufficient resources to perform in-depth audits on the majority of Hospital Cost Reports submitted to them. It is also generally known through the health care industry that two to three years will elapse from the time Hospital Cost Reports are filed until they are finalized. For these reasons, the cost reporting system relies substantially on the good faith of providers to prepare and file accurate Hospital Cost Reports.

49.     To this end, the Hospital Cost Report, Form 2552, contains the following warning:

> MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW. FURTHERMORE, IF SERVICES IDENTIFIED IN THIS REPORT WERE PROVIDED OR PROCURED THROUGH THE PAYMENT DIRECTLY OR INDIRECTLY OF A KICKBACK OR WERE OTHERWISE ILLEGAL, CRIMINAL,

14

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346 |  www.podhurst.com

CASE NO:

> CIVIL AND ADMINISTRATIVE ACTION, FINES AND/OR IMPRISONMENT MAY RESULT.
>
> That advisory is then followed by the following "Certification," which must be signed by the chief administrator of the provider or a responsible designee of the administrator:
>
> CERTIFICATION BY OFFICER OR ADMINISTRATOR OF PROVIDER(S)
>
> I HEREBY CERTIFY that I have read the above statement and that I have examined the accompanying electronically filed or manually submitted cost report and the Balance Sheet and Statement of Revenue and Expenses prepared by [name of facility, ID number of facility] for the cost reporting period beginning [date] and ending [date] and that to the best of my knowledge and belief, it is a true, correct and complete statement prepared from the books and records of the provider in accordance with applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of the health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

50.      Under Medicare Part B, physicians, like Dr. Gonzalez, must enroll with Medicare to be eligible for payment of covered medical services provided to treat patients who are beneficiaries under the Medicare program. The physician is authorized to bill Medicare for that treatment. Many physicians, like Dr. Gonzalez, derive a substantial portion of their revenue from the Medicare Program. In this case, the revenue is derived for the benefit of his employer and/or his agency, Defendants, Baptist Health and Baptist Hospital, which, in turn, pay Dr. Gonzalez a substantial salary and benefits based upon performance and revenue generated from his billings.

51.      In order to get paid from Medicare, providers, like Defendants herein, complete and submit a claim for payment on a designated Health Insurance Claim Form, which, during the relevant time period, was or has been designated CMS 1500. This form contains patient-specific information including the diagnosis and types of services that are assigned or provided to the

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

Medicare patient. The Medicare Program relies upon the accuracy and truthfulness of the CMS

1500 to determine whether and what amounts the provider is owed.

52.     To this end, the Health Insurance Claim Form, CMS 1500, contains the following

certification by the physician or supplier submitting a claim to Medicare:

> I certify that the services shown on this form were medically
> indicated and necessary for the health of the patient and were
> personally furnished by me or were furnished incident to my
> professional service by my employee under my immediate personal
> supervision, except as otherwise expressly permitted by Medicare
> or CHAMPUS regulations.

53.     That certification is then followed by the following "Notice:"

> Anyone who misrepresents or falsifies essential information to
> receive payment from Federal funds requested by this form may
> upon conviction be subject to fine and imprisonment under
> applicable Federal laws.

**V.    Conditions of Participation and Conditions of Payment**

54.     To participate in the Medicare Program, a health care provider must also file a

provider agreement with the Secretary of HHS. 42 U.S.C. § 1395cc. The provider agreement

requires compliance with certain requirements that the Secretary deems necessary for

participating in the Medicare Program and for receiving reimbursement from Medicare.

**A.    Medical Necessity and Appropriateness Requirements**

55.     One such important requirement for participating in the Medicare Program is that

for all claims submitted to Medicare, claims may be submitted only when medical goods and

services are (1) shown to be medically necessary, and (2) are supported by necessary and

accurate information. 42 U.S.C. § 1395y(a)(1)(A),(B); 42 C.F.R., Part 483, Subpart B; 42 C.F.R.

§ 489.20.

16

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

56.     Various claims forms, including but not limited to the Hospital Cost Report and the Health Insurance Claim Form, require that the provider certify that the medical care or services rendered were medically "required," medically indicated and necessary and that the provider is in compliance with all applicable Medicare laws and regulations. 42 U.S.C. § 1395n(a)(2); 42 U.S.C. § 1320c-5(a); 42 C.F.R §§ 411.400, 411.406.  Providers must also certify that the information submitted is correct and supported by documentation and treatment records. *Id. See also,* 42 U.S.C. § 1320c-5(a); 42 C.F.R. § 424.24.

57.     The practice of billing goods or services to Medicare and other federal health care programs that are not medically necessary is known as "overutilization."

### B.     Obligation to Refund Overpayments

58.     As another condition to participation in the Medicare Program, providers are affirmatively required to disclose to their fiscal intermediaries any inaccuracies of which they become aware in their claims for Medicare reimbursement (including in their cost reports) 42 C.F.R. §§ 401.601(d)(iii), 411.353(d); 42 C.F.R. Part 405, Subpart C. *See also* 42 C.F.R. §§ 489.40, 489.31. In fact, under 42 U.S.C. § 1320a-7b(a)(3), providers have a clear, statutorily-created duty to disclose any known overpayments or billing errors to the Medicare carrier, and the failure to do so is a felony.  Providers' contracts with CMS carriers or fiscal intermediaries also require providers to refund overpayments. 42 U.S.C. § 1395u; 42 C.F.R. § 489.20(g).

59.     Accordingly, if CMS pays a claim for medical goods or services that were not medically necessary, a refund is due and a debt is created in favor of CMS. 42 U.S.C. § 1395u(/)(3).  In such cases, the overpayment is subject to recoupment. 42 U.S.C. § 1395gg. CMS is entitled to collect interest on overpayments. 42 U.S.C. § 1395/(j).

17

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

### C.    Peer Review and Quality Assessment Obligations

60.    Another important requirement for a hospital that wishes to participate in the Medicare Program is that the hospital "must have an organized medical staff that operates under bylaws approved by the governing body and is responsible for the quality of medical care provided to patients by the hospital." 42 C.F.R. § 482.22. Hospitals must "develop, implement, and maintain an effective, ongoing, hospital-wide, data-driven quality assessment and performance improvement ['QAPI'] program." 42 C.F.R. § 482.21.

61.    As part of its QAPI program, a hospital "must set priorities for its performance improvement activities that (i) focus on high-risk, high-volume, or problem-prone areas; (ii) consider the incidence, prevalence, and severity of problems in those areas; and (iii) affect health outcomes, patient safety, and quality of care." *Id.* § 482.21(c)(1).

62.    Finally, a hospital "must track medical errors and adverse patient events, analyze their causes, and implement preventive actions and mechanisms[.]" *Id.§* 482.21(c)(2).

## VI.    Other Federally-Funded Health Care Programs

63.    Although false claims to Medicare are the primary FCA violations at issue in this case, the patients who were subjected to the medically unnecessary procedures that are the subject of this action were beneficiaries of one of three federally-funded health care benefit programs — Medicare, Medicaid, or TRICARE/CHAMPUS. Accordingly, those other two programs are briefly discussed as well.

64.    The Medicaid Program, as enacted under Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396, *et seq.,* is a system of medical assistance for indigent individuals. CMS administers Medicaid on the federal level, and reimbursement of hospital costs or charges is governed by Part A of Medicare, through the hospital cost report system, and reimbursement of

18

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346 |  www.podhurst.com

CASE NO:

physician charges is governed by Part B of Medicare. As with the Medicare Program, hospitals and physicians may, through the submission of cost reports and health insurance claim forms, recover costs and charges arising out of the provision of *appropriate* and *necessary* care to Medicaid beneficiaries.

65.     TRICARE, formerly known as CHAMPUS, is a federal program, established by 10 U.S.C. §§ 1071-1110, that provides health care benefits to eligible beneficiaries, which include, among others, active duty service members, retired service members, and their dependents. Although TRICARE is administered by the Secretary of Defense, the regulatory authority establishing the TRICARE program provides reimbursement to individual health care providers applying the same reimbursement requirements and coding parameters that the Medicare program applies. 10 U.S.C. §§ 1079(j)(2) (institutional providers), (h)(1) (individual health care professionals) (citing 42 U.S.C. § 1395, *et seq.).* Like Medicare and Medicaid, TRICARE will pay only for "medically necessary services and supplies required in the diagnosis and treatment of illness or injury." 32 C.F.R. § 199.4(a)(1)(i). And, like the Medicare Program and the Medicaid Program, TRICARE prohibits practices such as submitting claims for services that are not medically necessary, consistently furnishing medical services that do not meet accepted standards of care, and failing to maintain adequate medical records. 32 C.F.R. §§ 199.9(b)(3)-(b)(5).

66.     The process for billing and receiving payment from Medicare is that after a procedure is performed or a service is provided that gives rise to a potential reimbursement by Medicare, Defendants first assign a Medical Claim Number ("MCN") to the procedure.

67.     Next, a claim for payment is submitted to the fiscal intermediary, and a designated claim form, either a Form UB-4 or Form UB-92, is created.  This form contains the

19

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

patient-specific information, including the diagnosis and the type of services that were provided to the Medicare beneficiary.

68.     As a matter of course, the Form UB-4 or Form UB-92, and a CMS 1500 for the physician services, are typically submitted to the appropriate fiscal intermediary within a few business days after the medical service was provided but, in accordance with CMS regulations, in no event more than 120 days later.

69.     Defendants submit claims for all goods and services that are provided to patients who are beneficiaries of federally-funded health care programs.

**APPLICABLE MEDICINE**

70.     The allegations of false claims herein involve a variety of cardiac procedures associated with cardiac electrophysiology.  Relator, Dr. Perez has personal knowledge of the fraudulent conduct related to unnecessary multiple procedures and improper performance of surgical procedures.  Therefore, we will briefly describe the area of medical specialty and some examples of the fraudulent conduct related to both.

71.     Cardiac electrophysiology is a branch of cardiology involved with the treatment of electrical conduction disturbances of the heart. These disturbances are called arrhythmias (abnormal heart rhythms) and can lead to loss of consciousness (syncope), congestive heart failure (shortness of breath, lack of energy), palpitations, fatigue, or even sudden death. Arrhythmias can be caused by various medical conditions including coronary artery disease; high blood pressure; changes in the heart muscle (cardiomyopathy); valve disorders; electrolyte imbalances in the blood, such as sodium or potassium; injury from a heart attack; and as a result of the healing process after heart surgery. Arrhythmias can also be caused by certain substances or medications, such as caffeine, nicotine, alcohol, cocaine, inhaled aerosols, diet pills, and

20

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

cough and cold remedies. Emotional states such as shock, fright or stress can also cause irregular heart rhythms. These electrical conduction disturbances can often be treated with medication but frequently diagnosis of and treatment of arrhythmia requires invasive measures if clinically indicated.

72.     Central to the practice of electrophysiology is an examination referred to as an echocardiogram (ECHO) which is a noninvasive ultrasound based diagnostic study which is used to identify structural, valvular and wall motion abnormalities of the heart. It is frequently used to calculate the ejection fraction of the heart which is a measure of the heart's pumping ability. Specifically, ejection fraction (EF) is a measurement usually expressed as a percentage of blood leaving the heart each time it contracts. During each heartbeat cycle, the heart contracts and relaxes. When the heart contracts, it ejects blood from the two pumping chambers: the right and left ventricles. A normal heart pumps a little more than half of the heart's blood volume with each beat with LVEF ranges from 55-70%.

73.     At all times material hereto, Defendant Dr. Gonzalez was not on the panel of those authorized to read ECHO's at Baptist, and yet he consistently read the ECHO's of his patients in order to perform medically unnecessary and not clinically indicated procedures and, in turn, fraudulently submit bills for all of these procedures.

74.     When someone has a heart attack, the heart muscle can become permanently damaged, which is referred to as ischemic cardiomyopathy, and the EF decreases corresponding to the severity of the injury. There are also less common causes of damage to the heart muscle leading to decreased pumping ability that are often reversible and these are referred to as nonischemic cardiomyopathy.

21

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

75.    When the heart muscle is permanently damaged causing a decrease in the EF equal to or less than thirty-five percent (35%) in the setting of clinical heart failure, the patient is at risk for malignant arrhythmias and sudden cardiac death and implantation of an automatic implantable cardioverter defibrillator (AICD) can be indicated to continuously monitor the heart's rhythm and to pace or shock the heart if it stops beating or fibrillates.  This is referred to as sudden cardiac death.

76.    An electrophysiologic study ("EP Study") is indicated to evaluate a patient for a suspected or known arrhythmia. It is an invasive, provocative test in which catheters are advanced from an artery or vein in the groin into the heart, and it is done to induce an arrhythmia and to identify the aberrant conduction pathway that is causing it.  Because it is an invasive test, an EP Study is recommended when other, non-invasive tests, such as a standard electrocardiogram ("EKG"), Holter monitor, event recorder, stress test, ECHO or angiogram cannot provide enough information to thoroughly evaluate your abnormal heart rhythm.

77.    Treatment of an arrhythmia may be ablative (burning away of the abnormal conduction pathways which have been identified), cryoablation (freezing away the abnormal conduction pathways which have been identified) or with implantation of an electrical device (pacemaker, AICD, Biventricular AICD or Biventricular pacemaker).

78.    An AICD can sense a dangerous arrhythmia and is able to cardiovert (shock via the device) the patient if a malignant arrhythmia is noted or pace the heart if a prolonged, dangerous pause is sensed, or cardiac resynchronization by continuous pacing of the left ventricle from two opposite sites to resynchronize the heart walls of the failing heart by improving the timing of the contraction of the heart walls during each and every heart contraction.  These devices are technologically advanced and are some of the most costly device

22

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

implants used in medicine. The above devices are commonly used in the practice of electrophysiology but have strict criteria pertaining to their use. While these implanted devices have a limited battery life and need to be replaced on a regular basis when the battery energy is consumed, they do not need to be removed or replaced in order to update the software. The device is essentially a computer with various storage capacities to alert the physician to battery life and potential issues with device hardware or arrhythmias recorded on the device.

79.     Clinical and/or medical indications for these procedures and the implantation of electrical devices include:

**A.  AICD**

Left Ventricular Ejection Fraction (LVEF): less than or equal to 35% without reversible causes.

**B.  CARDIAC RESYNCHRONIZATION THERAPY (CRT):**

EF less than or equal to 35% without reversible causes and QRS duration 120ms or greater with left bundle branch block on ECG.

**C.  PACEMAKER**

Class I: Any symptomatic bradycardia. Bradycardia is a slow heart rhythm with a rate below 60 beats per minute.

Class II: Any impressive bradycardia without symptom correlation and/or rhythm abnormalities associated with high risk of progression.

Class III: Neither symptomatic or at significant risk for progression

**D.  DEVICE BATTERY/GENERATOR CHANGE**

At end of life or replacement interval - not for a software upgrade.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

E. **EP STUDY**

Symptomatic arrhythmia unresponsive to medical therapy or patient request to not take medications.

F. **AV OPTIMIZATION**

Patients with implanted pacemakers/AICD/BiVAICD who are not responding to pacing therapy procedures can be considered, however, not several times a year on the same patient. This procedure is of historical relevance in the modern era.

80. For several years, Defendant, Dr. Gonzalez has performed at least some, and possibly all, of the above-listed procedures despite the lack of the foregoing required clinical or medical indications, all with the knowledge and consent of Defendants, Baptist Health and Baptist Hospital, solely for the purpose of submitting false claims for payment by the federal government in order to increase revenue by many millions of dollars and enjoy the corresponding ill-gotten profits for the benefit of all of the Defendants.

81. Other procedures where the Relator has become aware of a consistent pattern of fraud by Defendants include the performing of unnecessary Head Upright Tilt Tests, which record your blood pressure and heart rate on a minute-by-minute basis while the table is tilted in a head-up position at different levels. The Head Upright Tilt Test is a lengthy and uncomfortable test for the patient, but lucrative for billing purposes. Relator, Dr. Perez has learned that Defendant, Dr. Gonzalez regularly scheduled patients, including elderly patients, for unnecessary Head Upright Tilt Tests followed by EP Studies, which is highly irregular patient management and not within the standard of care for electrophysiology.

82. The overutilization of these cardiac electrophysiology procedures results in significantly increased costs to the federal government and significantly increased profits for the

24

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

offending providers.  These reimbursement amounts must be added to the reimbursements made to Baptist Health and Baptist Hospital, for anesthesiologists' fees, hospital fees, and other related services billed with each additional procedure billed by Defendants.

## ALLEGATIONS

83.    Defendants Baptist Health and Baptist Hospital, have turned a blind eye to the systemic overutilization of medical procedures and improperly inflated billing practices of Defendant Dr. Gonzalez, which has led to the submission of hundreds, and more likely thousands, numerous false and fraudulent claims to Medicare and other federally-funded health care programs for at least the last five years.

84.    Defendants submit claims for all goods and services that are provided to patients who are beneficiaries of federally-funded health care programs including:

    a)    For years, Dr. Gonzalez and/or the Baptist Defendants submitted Hospital Cost Reports (Form 2552) and falsely certified that medical procedures and health care services performed by Dr. Gonzalez were medically necessary; and

    b)    For years, Dr. Gonzalez and/or the Baptist Defendants submitted Health Insurance Claim Forms (Form CMS 1500) and falsely certified that the medical case and services for his patients were medically indicated and necessary.

85.    Relator, Dr. Perez has personal knowledge, and has reason to know as a result of his daily interaction and duties as a physician at Defendants, Baptist Health and Baptist Hospital, as well as his personal involvement with patient care, and conversations with others physicians, nurses, and staff, that millions of dollars in claims were submitted to the federal government for

25

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

improper, unnecessary, and excessive medical procedures, such as those procedures which are described in more detail below.

86. Moreover, as demonstrated by the facts set forth below, Defendants, Baptist Health and Baptist hospital, have knowledge of the pattern and practice of Defendant Dr. Gonzalez performing improper, unnecessary, and excessive medical procedures that were of little to no medical value, incompatible with the standards of acceptable medical care, and therefore not payable by Medicare, Medicaid, or TRICARE/CHAMPUS. At a minimum, each of the Defendants "act[ed] in reckless disregard of the truth or falsity" of the representations about medical necessity that were presented to the federal government, not to mention the reckless disregard for the health, welfare and safety of their patients. These fraudulent practices have taken place for at least the last five years.

87. Relator, Dr. Perez also has personal knowledge and has reason to know that when widespread and official quality assurance complaints made against Defendant Dr. Gonzalez regarding his unethical procedures, failure to follow proper medical indications and protocols, and his suboptimal performance of procedures were investigated by Defendants, Baptist Health and Baptist Hospital, no remedial action was taken against Defendant Dr. Gonzalez in order to correct this fraudulent conduct. Defendant, Dr. Gonzalez has been the subject of reviews and evaluations for quality assurance by a Peer Review Committee related to multiple issues with his performance and improper patient care, including the fact the Defendant, Dr. Gonzalez had a very high volume among the Electrophysiologists at Baptist. Ultimately, the committee found that patient safety had been compromised. Nevertheless, no affirmative or ameliorative action was taken by the administration of Defendants, Baptist Health and Baptist Hospital.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

88.     In the meantime, Form UB-4s, Form UB-92s, and CMS 1500 submitted by the Defendants falsely represented that money was owed to Defendants for claims that the Defendants knew were based on unnecessary and improperly performed medical procedures. Those forms also contained knowingly false certifications that Defendants were in compliance with applicable laws and regulations, when in fact Defendants knew they were not in compliance with numerous Medicare program prerequisites, including the duty to maintain an effective peer review program and the fundamental duty to repay any known payments for medically unnecessary procedures.

89.     The truthfulness of those certifications was a prerequisite to receipt of payment from the government for these claims.  For years, Dr. Gonzalez submitted claims to Medicare containing false information that medical procedures that he performed were medically necessary.

90.     As a result of Defendants, Baptist Health's and Baptist Hospital's, inaction, Defendant Dr. Gonzalez has been permitted to continue performing medically unnecessary and excessive procedures — for his own financial benefit and to the continued financial benefit of Defendants Baptist Health and Baptist Hospital, and to the continued detriment of the federal government and many unsuspecting vulnerable patients.

**Examples of Medically Unnecessary Repetitive or Stage Procedures**

91.     Defendant, Dr. Gonzalez was motivated to have patients undergo excessive and non-medically indicated procedures in order to meet or exceed his productivity levels as measured by Defendants, Baptist Health and Baptist Hospital, and justify his position and corresponding salary.

27

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

92.     In furtherance of their scheme, Defendant, Dr. Gonzalez is allowed to read patients ECHO's at Baptist facilities.  Defendant, Dr. Gonzalez is permitted to do so in order to subsequently prescribe and perform additional invasive procedures which are excessive, medically unnecessary and are not clinically indicated but serve to generate fraudulent bills to Medicare the payments of which are then received and enjoyed by Defendants.

93.     Additional detail is provided below for select, representative incidents of medically unnecessary procedures, excessive procedures, or procedures which caused serious injury to patients by Defendant Dr. Gonzalez.

94.     **Patient No. 1**: A 19-year-old girl who had a slight arrhythmia. Dr. Gonzalez performed an ablation procedure on her that was not medically necessary and not medically indicated. Cardiac ablation is a procedure to scar or destroy tissue in your heart that is allowing incorrect electrical signals to cause an abnormal heart rhythm. The fact that this procedure was unnecessary was uncovered in an investigation by Baptist.  Specifically, a Peer Review Committee at Baptist investigated Dr. Gonzalez's conduct with respect to this procedure and determined, among other things, that Dr. Gonzalez was not acting in the patient's best interests by performing the ablation procedure, a procedure which was not medically necessary.

95.     **Patient No. 2**: An older gentleman with arrhythmia, who needed a pacemaker. Dr. Gonzalez was going to use a micropacer, which has a higher reimbursement rate through Medicare. Unfortunately for Dr. Gonzalez, this patient's Godson is a cardiologist, and the cardiologist immediately realized that a micropacer was not the indicated pacemaker for this type of arrhythmia. The cardiologist reported Dr. Gonzalez's conduct to Dr. Barry Katzen at Baptist. Dr. Katzen is the founder and Medical Director of Miami Cardiac & Vascular Institute, which is part of Baptist Hospital.  This procedure was investigated by the Peer Review

28

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

Committee and found not to be medically indicated. In addition, the committee reviewed numerous procedures where Dr. Gonzalez inserted a dual chamber pacemaker (more lucrative) instead of a single chamber pacemaker,

96.     The examples described above are just a small sampling of the medically unnecessary, excessive, and improperly performed procedures and improper fraudulent billing practices implemented by Defendant, Dr. Gonzalez witnessed or known by Relator, Dr. Perez and that Defendants, Baptist Health and Baptist Hospital, have endorsed and allowed to continue. A high percentage of Defendant Dr. Gonzalez's patients who have undergone these unnecessary procedures are beneficiaries under the Medicare, Medicaid or TRICARE programs. Defendants, Baptist Health, Baptist Hospital, and Dr. Gonzalez submitted claims to the federal government for payment for the equipment and medical services related to all of these multiple procedures performed on each of those patients.

97.     On July 27, 2016, Dr. Gonzalez received the following review, titled "Disappointed in Miami, FL," from a patient:

> Met him at a hospital when he visited my room and gave me his card. Seems knowledgeable but has trouble keeping appts. Orders every test under the sun if you let him. Had me retake a $1500 test because the technician made an error but made no effort to reimburse me for the botched test. Thinks patients are made of money. Only works Tuesdays and Thursdays but don't bother making morning appts because he will be late. I got tired of the abuse and switched to another electrophysiologist.

*See* www.healthgrades.com/physician/dr-efrain-gonzalez.   This type of care, according to Relator, is representative of Dr. Gonzalez's general practice.   Furthermore, Relator has repeatedly witnessed Dr. Gonzalez create medical records and bills for meeting and visiting with patients when, in fact, he had not done so.

29

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

98.    Prior to Relator's direct and personal knowledge of Defendant Gonzalez's pattern and practice of performing medically unnecessary, excessive, and improper procedures and fraudulent billing practices, all of which have been sanctioned by Defendants Baptist Health and Baptist Hospital, other physicians, nurses, and staff also witnessed these practices.

99.    Moreover, after being advised directly by physicians about Defendant Dr. Gonzalez's fraudulent practices resulting in false claims being submitted to Medicare and other government programs, Defendants Baptist Health and Baptist Hospital failed to inform the federal government about the unnecessary surgical procedures they had discovered, and Defendants Baptist Health and Baptist Hospital, failed to refund to the federal government the payments received for such medically unnecessary procedures.

100.    Relator, Dr. Perez has direct knowledge that the administration at both Defendants, Baptist Health and Baptist Hospital, knowingly and willingly allowed Defendant, Dr. Gonzalez to continue performing unnecessary, excessive, and improper procedures for their own financial benefit and prevented these and more issues from coming to light by failing to retain an outside reviewer to further investigate Defendant, Dr. Gonzalez's systemic and continued fraudulent conduct.  Instead, these Defendants intentionally chose to bury their head in the sand despite the strong and consistent recommendations from the peer review committees and medical staff to the contrary.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(A)

101.    The United States re-alleges and incorporates paragraphs 1-100 as if fully set forth herein.

30

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

102.    This is a claim for refunds, treble damages, civil penalties and attorney's fees, under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.,* as amended.

103.    By means of the acts described above, Defendants have knowingly presented or caused to be presented false or fraudulent claims for payment to the United States. The United States, unaware of the falsity of the claims made, and in reliance on the accuracy thereof, paid for claims that would otherwise not have been allowed.

104.    By reason of these payments, the United States has been damaged, and continues to be damaged, in a substantial amount.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(B)

105.    The United States re-alleges and incorporates paragraphs 1-100 as if fully set forth herein.

106.    This is a claim for refunds, treble damages, civil penalties and attorney's fees, under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.,* as amended.

107.    By means of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements in support of and material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B).  The United States, unaware of the falsity of the records and statements, and in reliance on the accuracy thereof, paid for claims that would otherwise not have been allowed.

108.    By reason of these payments, the United States has been damaged, and continues to be damaged, in a substantial amount.

31

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(G)

109.    The United States re-alleges and incorporates paragraphs 1-100 as if fully set forth herein.

110.    This is a claim for refunds, treble damages, civil penalties and attorney's fees, under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.,* as amended.

111.    By means of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the government, in violation of 31 U.S.C. § 3729(a)(1)(G).

112.    By virtue of the false or fraudulent statements made to the government and the concealment by Defendants, the United States has been damaged, and continues to be damaged, in a substantial amount.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff/Relator prays that upon trial or final hearing, the Court enter a final judgment for Plaintiff/Relator and the United States against Defendants, as follows:

1.  For the refund or repayment of all amounts that were billed in violation of the FCA, 31 U.S.C. §§ 3729, *et seq.;*

2.  For civil penalties of $5,500 to $11,000 for each false claim pursuant to 31 U.S.C. § 3729(a);

3.  For three times the amount of damages proved, pursuant to 31 U.S.C. § 3729(a);

4.  For costs of court;

5.  For prejudgment and post-judgment interest at the rates permitted by law;

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CASE NO:

6.   For such other and further relief as may be appropriate and authorized by law; and;

7.   Plaintiff/Relator further prays that he be awarded an appropriate percentage of the amount recovered by and for the United States as a result of this action, together with statutory expenses, plus reasonable attorneys' fees and costs, in accordance with 31 U.S.C. § 3730(d).

## DEMAND FOR TRIAL BY JURY

Plaintiff/Relator demands a trial by jury of all issues so triable as a matter of right.

DATED:        April 19, 2018                    Respectfully submitted,

                                                **PODHURST ORSECK, P.A.**
                                                SunTrust International Center
                                                One SE 3rd Avenue, Suite 2300
                                                Miami, Florida 33131
                                                Telephone: (305) 358-2800
                                                Facsimile: (305) 358-2382
                                                Email: rrasco@podhurst.com

                                                By:   /s/ Ramon A. Rasco
                                                      Florida Bar No. 617334

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com

CASE NO:

6.  For such other and further relief as may be appropriate and authorized by law; and;

7.  Plaintiff/Relator further prays that he be awarded an appropriate percentage of the amount recovered by and for the United States as a result of this action, together with statutory expenses, plus reasonable attorneys' fees and costs, in accordance with 31 U.S.C. § 3730(d).

## DEMAND FOR TRIAL BY JURY

Plaintiff/Relator demands a trial by jury of all issues so triable as a matter of right.

DATED:        April 20, 2018                    Respectfully submitted,

**PODHURST ORSECK, P.A.**
SunTrust International Center
One SE 3rd Avenue, Suite 2300
Miami, Florida 33131
Telephone: (305) 358-2800
Facsimile: (305) 358-2382
Email: rrasco@podhurst.com

By: _____
         Ramon A. Rasco, Esq.
         Florida Bar No. 617334

33

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 Miami 305.358.2800  Fax 305.358.2382  •  Fort Lauderdale 954.463.4346  |  www.podhurst.com